Larry **ROBERTS** as Personal Representative of the Estate of Nell Roberts, Appellant–Plaintiff,

v.

Dr. Peggy **SANKEY**, et. al., Appellee–Defendant.

No. 83A04–0308–CV–420.

Court of Appeals of Indiana.

Aug. 23, 2004.

Rehearing Denied Oct. 26, 2004.

Eric A. Frey, Frey Law Firm, Stephen L. Williams, Mann Law Firm, John P. Nichols, C. Joseph Anderson, Anderson & Nichols, Terre Haute, IN, Attorneys for Appellants.

Jill L. McCrory, William N. Ivers, Sonia S. Chen, Stewart & Irwin, P.C., Indianapolis, IN, Attorneys for Appellee Dr. Peggy Sankey.

## OPINION

VAIDIK, Judge.

### Case Summary

Larry Roberts, personal representative of the estate of Nell Roberts, appeals the trial court's grant of summary judgment in favor of Dr. Peggy Sankey. Because we find that Indiana Code § 16–21–2–7 does not create a private right of action, we conclude that the trial court properly granted summary judgment in favor of Dr. Sankey.

### Facts and Procedural History

In 1994, Nell died while she was a patient in the Vermillion County Hospital ("VCH"). An investigation by the Indiana State Police subsequently revealed that during the time period that Nell was a patient at VCH, the death rate in the four-bed Intensive Care Unit ("ICU") had increased dramatically. Specifically, during a 22–month period, 147 patients died in the ICU at VCH. Orville Lynn Majors, a licensed practical nurse at VCH, was working when 121 of those patients died. Majors was eventually charged with and convicted of the murder of six of those patients. *Majors v. State*, 773 N.E.2d 231 (Ind.2002). Nell was not one of the patients whom Majors was convicted of murdering.

Dr. Sankey, a pathologist, was a member of the medical staff at VCH in 1994 when Nell was a patient there. However, at no time did Dr. Sankey see or treat Nell.

In January 1996, Roberts, as personal representative of the estate of Nell Roberts, filed a Proposed Complaint with the Indiana Department of Insurance against Majors, Dr. Sankey, Dr. Franklin Swaim, Dr. John Albrecht, John Ling, Jr., The

Board of Trustees of VCH, and Vermillion County, Indiana. The proposed complaint alleged medical negligence, gross negligence, and res ipsa loquitur. In June 1996, Dr. Swaim filed a Motion for Preliminary Determination of Law and for Summary Judgment ("Motion for Summary Judgment") with the Vermillion Circuit Court pursuant to Indiana Code § 34–18–11–1 (formerly Indiana Code § 27–12–11–1). Dr. Sankey subsequently filed a Joinder in Dr. Swaim's Motion for Summary Judgment.[1] The trial court held a hearing on Dr. Swaim's and Dr. Sankey's Motions for Summary Judgment in May 2003. The following month, the trial court issued an order granting Dr. Sankey's Motion for Summary Judgment and denying Dr. Swaim's Motion for Summary Judgment.[2] Roberts, as personal representative of the Estate of Nell Roberts, appeals the trial court's grant of summary judgment in favor of Dr. Sankey.

## Discussion and Decision

Roberts contends that the trial court erred in granting summary judgment in favor of Dr. Sankey. "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." *Bushong v. Williamson*, 790 N.E.2d 467, 474 (Ind.2003). On appeal, our standard of review is the same as that of the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 473. We construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party. *Id.* On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.*, 789 N.E.2d 1037, 1038 (Ind.Ct.App.2003). A party appealing from an order granting summary judgment has the burden of persuading the appellate tribunal that the decision was erroneous. *Id.* at 1038–39.

Medical malpractice cases are no different from other kinds of negligence actions regarding what must be proven. *Bader v. Johnson*, 732 N.E.2d 1212, 1216–17 (Ind.2000). The plaintiff must show: (1) duty owed to the plaintiff by the defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by the defendant's breach of duty. *Id.* at 1217. "The duty owed by a physician arises from the physician-patient relationship." *Thayer v. OrRico*, 792 N.E.2d 919, 924 (Ind.Ct.App.2003) (quotation omitted), *trans. denied.* Thus, a physician-patient relationship is a legal prerequisite to a medical malpractice action. *Miller v. Martig*, 754 N.E.2d 41, 46 (Ind. Ct.App.2001). Generally, where a doctor does not treat, see, or in any way participate in the care or diagnosis of the patient, a physician-patient relationship will not be found to exist. *Id.* In the absence of a physician-patient relationship, there can be

---

1. Dr. Swaim also filed a Motion to Consolidate Preliminary Determinations of Law and Summary Judgment in seven related causes in which he was named a defendant, including the one at issue here. However, because this appeal only concerns Dr. Sankey, we do not address the other causes relating to Dr. Swaim.

2. From what we can ascertain, the trial court denied Dr. Swaim's Motion for Summary Judgment because he was a member of VCH's Service of Medicine Committee, which was responsible for reviewing hospital admissions, discharges, incident reports, transfers, deaths, and medical care in general. Dr. Sankey never served on this committee or any other committee that was responsible for reviewing hospital deaths.

no liability on the part of the physician, and the entry of summary judgment is appropriate. *Id.*

 On appeal, Roberts neither disputes this authority nor asserts that Dr. Sankey and Nell had a physician-patient relationship. Instead, Roberts argues that Indiana Code § 16–21–2–7 creates a duty from Dr. Sankey to Nell even in the absence of a physician-patient relationship.[3] Indiana Code § 16–21–2–7 provides:

The medical staff of a hospital is responsible to the governing board[4] for the following:

(1) The clinical and scientific work of the hospital.

(2) Advice regarding professional matters and policies.

(3) Review of the professional practices in the hospital for the purpose of reducing morbidity and mortality and for the improvement of the care of patients in the hospital, including the following:

(A) The quality and necessity of care provided.

(B) The preventability of complications and deaths occurring in the hospital.

Roberts asserts that because Dr. Sankey, who was a member of the medical staff at VCH, did not review the professional practices at VCH for the purpose of reducing morbidity and mortality, she breached the statutory duty; therefore, he can maintain an action against Dr. Sankey pursuant to the Indiana Medical Malpractice Act. Although Dr. Sankey may have had a duty under Indiana Code § 16–21–2–7, it does not necessarily follow that Roberts may enforce this duty in a private cause of action.

 When a civil cause of action is premised upon violation of a duty imposed by statute, the initial question to be determined by the court is whether the statute in question confers a private right of action. *Vaughn v. Daniels Co. (W.Va.), Inc.,* 777 N.E.2d 1110, 1134 (Ind.Ct.App.2002), *clarified on reh'g on other grounds,* 782 N.E.2d 1062 (Ind.Ct.App.2003), *trans. pending.* The determination of whether a civil cause of action exists begins with an examination of legislative intent. *Id.* This primarily includes looking to whether the statute is designed to protect the general public and whether the statutory scheme contains an enforcement mechanism or remedies for violation of the duty. *See id.* "As a general rule, a private party may not enforce rights under a statute designed to protect the public in general and containing a comprehensive enforcement mechanism." *LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1260 (Ind.2000).

In determining legislative intent, it is important to see where the statute at issue is located within the Indiana Code. Here, Indiana Code § 16–21–2–7 is located in the chapter titled Licensure of Hospitals. Other statutes contained in Chapter 2 pertain to the State's responsibility to license and regulate hospitals. For example, Indiana Code § 16–21–2–2 provides that the State shall license and regulate hospitals. Indiana Code § 16–21–2–4 provides that the State shall administer Chapter 2

---

3. Roberts notes in his brief that "[t]here are similar issues in most of the remaining sixty medical malpractice actions so this issue has a broad application in the overall VCH/Majors litigation." Appellant's Br. p. 13.

4. "The governing board of the hospital is the supreme authority in the hospital and is responsible for" the management, operation, and control of the hospital; the appointment, reappointment, and assignment of privileges to members of the medical staff; and establishing requirements for appointments to and continued service on the hospital's medical staff. Ind.Code § 16–21–2–5.

with the advice of the hospital council, which is appointed by the Governor. Indiana Code § 16–21–2–6 provides that hospitals shall report certain information to the State, such as when it terminates a hospital staff physician's employment. Other statutes in Chapter 2 address who must obtain a license from the State and what the license application must contain. Ind.Code §§ 16–21–2–10, –11. After examining Chapter 2, it is apparent that the legislature intended this chapter to address the State's responsibility to license and regulate hospitals for the protection of hospital patients. *See* Ind.Code § 16–21–2–7(3).

The following chapter, Chapter 3, is titled Remedies for Violation and expounds further on the State's responsibility in the licensing and regulation of hospitals. Specifically, Indiana Code § 16–21–3–1 provides that the State may impose various remedies for violation of a hospital licensure requirement, including: (1) issuing a letter of correction; (2) issuing a probationary license; (3) conducting a resurvey; (4) denying renewal of a license; (5) revoking a license; or (6) imposing a civil penalty in an amount not to exceed $10,000.

After examining Chapter 2 as well as the available remedies for failing to abide by Chapter 2's hospital licensure requirements, we find that the statutory scheme contains a comprehensive enforcement mechanism for monitoring compliance with the hospital licensure requirements for the protection of hospital patients. *See Vaughn,* 777 N.E.2d at 1134. This comprehensive enforcement scheme is placed in the hands of the State. We cannot glean any apparent legislative intent to authorize a private right of action for the failure of a physician to follow any of the medical staff responsibilities set out in Indiana Code § 16–21–2–7. *See id.* at 1135. We are unwilling to go beyond the intent of the legislature in providing a private remedy under this statutory scheme. *See id.*

Nevertheless, Roberts argues that *Winona Memorial Hospital, Limited Partnership v. Kuester,* 737 N.E.2d 824 (Ind. Ct.App.2000), which is the only case that addresses Indiana Code § 16–21–2–7, creates a duty from Dr. Sankey to Nell. In effect, Roberts argues that *Kuester* already determined that Indiana Code § 16–21–2–7 confers a private right of action for breach of the statute's duties. However, Roberts reads too much into *Kuester.* In *Kuester,* the court did not create a duty from a physician to a patient under Indiana Code § 16–21–2–7. Rather, the court looked to the statute to determine whether the legislature intended that negligent credentialing of a physician falls within the ambit of the Indiana Medical Malpractice Act. *Id.* at 826–27. The court ultimately concluded that negligent credentialing of a physician is subject to the Medical Malpractice Act. *Id.* at 828. Roberts is wrong that *Kuester* determined that Indiana Code § 16–21–2–7 creates a private right of action upon which a patient can sue a physician.[5]

Because the statutory scheme contains a comprehensive enforcement mechanism that addresses the State's responsibility to license and regulate hospitals for the protection of hospital patients, we conclude that Indiana Code § 16–21–2–7 does not create a private right of action. *See Vaughn,* 777 N.E.2d at 1134. Further, we did not find such a private right of action in *Kuester.* Accordingly, the trial court

**5.** To the extent that *Kuester* does create a private right of action for breach of Indiana Code § 16–21–2–7, we decline to follow it.

properly granted summary judgment in favor of Dr. Sankey.[6] *See id.* at 1135.

Affirmed.

SULLIVAN, J., and MAY, J., concur.

---

**6.** In light of our holding that the statutory scheme does not create a duty in a private cause of action, we need not address Roberts' argument that the duty contained in Indiana Code § 16–21–2–7 is non-delegable.