**ESTATE OF Mary A. CULLOP Deceased, by Administrator, Larry Cullop, Appellant–Plaintiff,**

v.

**STATE of Indiana and Rita Alumbaugh, Mary Ann Bruton, Donald Paul Weeks, Janet Lucile Saunders, Myron and Delores McCammon, Appellees–Defendants.**

No. 42A01–0403–CV–118.

Court of Appeals of Indiana.

Jan. 26, 2005.

Rehearing Denied March 31, 2005.

John P. Young, Young & Young, Indianapolis, IN, Attorney for Appellant.

Eric D. Johnson, Kightlinger & Gray, LLP, Mark A. Metzger, Cynthia E. Music, Due Doyle Fanning & Metzger, LLP, Indianapolis, Brad Bough, Terre Haute, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Following an automobile collision resulting in the death of his wife, Larry Cullop filed a negligence action against property owners and tenant farmers of land from which water had been diverted onto a roadway. The trial court granted summary judgment in favor of the property owners and tenant farmers. Because the property owners and the tenant farmers neither knew nor should have known of the latent design defect in the highway approach, which was designed, constructed, and maintained by the State, we find that they did not breach their common law duty to refrain from creating hazards to the traveling public. Additionally, we decline to recognize a private cause of action under Indiana Code § 9–21–19–6. Accordingly, we affirm the trial court's grant of summary judgment to both the property owners and the tenant farmers.

### Facts and Procedural History

This appeal arises out of the accidental death of Mary Cullop. On June 13, 1999, Larry and Mary Cullop were traveling northbound along Highway 41 in Vigo County, Indiana. Larry was driving, and Mary was the front seat passenger in the vehicle. It was a rainy day, and as the pair traveled, the rainfall varied from a sprinkle to heavy rain. Because of what Larry described as ruts in the right-hand lane of travel, he opted to drive in the left-hand lane. As the Cullops drew near the intersection at Hook Road, Larry noticed a vehicle approaching from behind. Larry moved into the right hand lane to allow the vehicle to pass. As the vehicle passed, it threw water upon the Cullops' windshield, which obstructed Larry's view. At about the same time, the Cullops encountered deep water on the roadway and their vehicle began to slide. The Cullops' vehicle crossed a grass median, entered the southbound Highway 41 lanes of travel, and collided with another vehicle. Mary died as a result of the collision.

Indiana State Police Trooper Charles Tharp investigated the collision. Shortly after the collision, Trooper Tharp observed that water was being diverted onto the roadway at the point where the Cullops lost control of their vehicle. Vigo County Sheriff's Deputy Robert Bartlett observed this as well and took photographs of the water being diverted from the ditch running alongside Highway 41 onto the roadway. There was a field entrance ("the Drive") constructed at the point where the water was being diverted. The Drive—located on the eastside of the northbound lanes of Highway 41—permitted access to property owned by Alumbaugh, Weeks, Bruton, and Saunders (collectively, "Property Owners"). The Property Owners did not occupy the land; rather, they leased the land to Myron and Dolores McCam-

mon so that the McCammons could farm the land.[1] The Drive itself was situated on a limited access right-of-way line that was conveyed in fee simple to the State of Indiana by the Property Owners in 1980, and the State has since maintained the land between that line and Highway 41. In the early 1980s, the State performed work on Highway 41 and the Drive. In the early 1990s, the State of Indiana engaged Rieth–Riley Construction to perform reconstruction work on Highway 41 in the area of the Drive.

After employing a professional surveyor to evaluate the Drive in anticipation of litigation, Cullop determined that the Drive did not have the requisite negative slope away from the shoulder of the road. Based on the Drive's non-compliance with State standards for approaches from highways, Cullop—as administrator of Mary's estate—filed a negligence action against the Property Owners, the McCammons, the McClains, the State of Indiana, and Rieth–Riley Construction.[2]

Subsequently, the Property Owners and the McCammons moved the trial court for summary judgment, noting that the Drive was located on property owned and maintained by the State, that the Property Owners were not in possession of the land that is connected to Highway 41 by the Drive, that neither the Property Owners nor the McCammons had reason to believe that the Drive was defective in any manner, that neither the Property Owners nor the McCammons had reconstructed the Drive in any manner or allowed the Drive

to fall into a state of disrepair, and that Cullop failed to establish that water on the roadway diverted by the Drive was the cause of the collision. The trial court granted summary judgment in favor of the Property Owners and against Cullop on the basis that the Property Owners—as owners not in possession of the land—did not owe a duty to Cullop as a member of the traveling public, that the Property Owners were not authorized to maintain the State of Indiana's right-of-way and there was no evidence to establish negligent maintenance by the Property Owners, and that Cullop failed to establish proximate cause. The trial court also granted summary judgment in favor of the McCammons and against Cullop, reasoning that any dangerous condition that may have existed was entirely within the right-of-way occupied, claimed, controlled, and possessed by the State; that neither statutory nor administrative provisions created a duty running from the McCammons to the Cullops because the McCammons did not alter the condition of the Drive nor allow it to fall into a state of disrepair; that it was not reasonable to expect the McCammons to identify a latent defect in the design and construction of the Drive built for, accepted by, and maintained by the State; and that there was insufficient evidence to establish causation. Finding no just cause for delay, the trial court ordered each of the judgments to be entered as a final judgment. Cullop now appeals.

### Discussion and Decision

Cullop appeals two separate grants of summary judgment, one in favor of the

---

1. The McCammons did not reside on the land. They merely farmed the land pursuant to an oral agreement with the Property Owners.

2. The McClains, Rieth–Riley Construction, and the State of Indiana are not parties to this appeal. The McClains resided on land situated adjacent to the Property Owners' land and were granted summary judgment early in the case as they did not have any interest in the

Drive. Rieth–Riley was granted summary judgment on the basis of the accepted work doctrine. The trial court denied the State's motion for summary judgment, and the State moved this Court to accept an interlocutory appeal of the matter. This Court denied the State's request to file an interlocutory appeal on November 22, 2004.

Property Owners and one in favor of the McCammons. When reviewing a grant or denial of a motion for summary judgment, the appellate standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Catt v. Bd. of Comm'rs of Knox County*, 779 N.E.2d 1, 3 (Ind.2002). Summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.*

To recover under a theory of negligence, a plaintiff must establish three elements: (1) a duty owed to the plaintiff; (2) a breach of that duty by the defendant; and (3) the breach proximately caused plaintiff's damages. *Sizemore v. Templeton*, 724 N.E.2d 647, 650 (Ind.Ct.App. 2000). Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide. *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003). Whether a particular act or omission is a breach of duty is generally a question of fact for the jury. *Id.* It can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts. *Id.*

## I. Common Law Duty

It is well-established under Indiana common law that those who own or are otherwise in possession of land have a duty to the traveling public to exercise reasonable care in the use of their property so as not to interfere with safe travel on public roadways. *Sheley v. Cross*, 680

N.E.2d 10, 12 (Ind.Ct.App.1997), *trans. denied.* An owner or occupier of land breaches his duty only when risks created by the possessor, or of which the possessor knew or should have known, exist and the possessor of the land fails to take reasonable steps to avoid foreseeable harm to the traveling public. *Pitcairn v. Whiteside*, 109 Ind.App. 693, 34 N.E.2d 943, 946 (1941).

The undisputed evidence before this Court establishes that the Drive, which was designed, constructed, and maintained by the State, did not comply with State standards for approaches to public highways; specifically, the Drive did not slope away from the highway so as to prevent water from spilling over onto the road's surface during heavy rainfall. The improper grading, however, would not have been readily apparent to laypersons such as the Property Owners and the McCammons, and they did not have knowledge that the Drive was improperly designed. In fact, it was only after Cullop hired a professional surveyor that it was established that the Drive did not have the requisite negative slope away from the shoulder of the road. Neither the Property Owners nor the McCammons altered the Drive in any manner. Nor did they allow the Drive to fall into a state of disrepair. Most importantly, however, there had never been any reports of water being diverted onto Highway 41 before the day of the accident. In light of these undisputed facts, we find that neither the Property Owners nor the McCammons knew or had reason to know of the Drive's design defect, and therefore, we conclude that they did not breach their duty to the Cullops as members of the traveling public.[3] To hold otherwise would place too

---

**3.** Because we find that Cullop fails to establish that either the Property Owners or the

McCammons breached a duty owed to the Cullops as members of the traveling public,

heavy a burden on possessors of land, effectively requiring that they hire experts to verify that the State has complied with the construction standards the State itself has set in the absence of some indication that something is awry. This we are not prepared to do.

## II.Statutory Duty

■ Cullop also claims that the Property Owners and the McCammons owed the Cullops a duty pursuant to statute, specifically Indiana Code § 9–21–19–6. Indiana Code § 9–21–19–6 states:

> The owners or occupants of property abutting a state highway shall maintain and keep in repair all private entrances, driveways, and approaches. Private entrances, driveways, and approaches may not be constructed or maintained in a manner that obstructs or interferes with the highway, traffic, or a drain or ditch that has been constructed on or that serves the highway. An owner or occupant of abutting property shall remove private entrances, driveways, and approaches at the owner's expense when requested to do so by the Indiana department of transportation.

We do not dispute that Indiana Code § 9–21–19–6 creates a duty for owners and occupants to maintain and keep in repair the approaches to their land.[4] It does not necessarily follow, however, that Cullop may enforce this duty in a private cause of action.

■ When a civil cause of action is premised upon violation of a duty imposed by statute, the initial question to be determined by the court is whether the statute in question confers a private right of action. *Roberts v. Sankey*, 813 N.E.2d 1195, 1198 (Ind.Ct.App.2004), *reh'g denied, trans. pending.* The determination of whether a civil cause of action exists begins with an examination of legislative intent. *Id.* This primarily includes discerning whether the statute is designed to protect the general public and whether the statutory scheme contains an enforcement mechanism or remedies for violation of the duty. *See id.* "As a general rule, a private party may not enforce rights under a statute designed to protect the public in general and containing a comprehensive enforcement mechanism." *Id.* (quoting *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1260 (Ind.2000)).

■ Here, Indiana Code § 9–21–19–6 is located in the chapter entitled Entrances to State Highways from Private Property. Section two of that chapter provides, "The Indiana department of transportation shall adopt rules and requirements for private entrances, driveways, and approaches necessary to provide for drainage of the highway, preservation of the highway, and the safety and convenience of traffic on the highway." Ind.Code § 9–21–19–2. Thus, the statutory scheme is aimed at benefiting the general public rather than specific individuals. After establishing the Indiana Department of

---

we need not reach the issues of proximate cause and whether Cullop was qualified to testify as to hydroplaning.

**4.** We recognize that a similar duty can be found in Indiana Code § 9–21–19–7 as well. That statutory section provides:

> When a highway in the state highway system or the state maintained route through a city or town is constructed or reconstructed, the construction of all public road approaches and existing private approaches, together with the drainage structures required for the road's protection, shall be included as a part of the improvement of the highway or state maintained route.... Upon the completion of the highway, the owners or occupants of adjoining lands shall keep in repair all private entrances, driveways, and approaches from highways. Ind.Code § 9–21–19–7.

Transportation as the overseeing agency and setting forth various requirements and restrictions for approaches, the chapter indicates that a person who violates any of the chapter's provisions commits a Class C infraction. Ind.Code § 9–21–19–8. In *Coons v. Kaiser,* 567 N.E.2d 851, 852 (Ind. Ct.App.1991), *reh'g denied,* we reiterated, "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers,* 414 U.S. 453, 459, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974), *reh'g denied* ). Moreover, in *Borne v. Northwest Allen County Sch. Corp.,* 532 N.E.2d 1196 (Ind.Ct.App. 1989), *trans. denied,* we found no private cause of action where statutory scheme provided a criminal penalty for the knowing failure to report suspected child abuse. Based on the foregoing, we find that Cullop cannot maintain a private cause of action based on the duty created by Indiana Code § 9–21–19–6.[5]

Based on the foregoing, we conclude that both the Property Owners and the McCammons are entitled to summary judgment.

Affirmed.

RILEY, J., and CRONE, J., concur.

---

**5.** Even if we were to find this statutory scheme created a private cause of action, we would find no breach because the duty created by Indiana Code § 9–21–19 *et seq.* is to "maintain and keep in repair" approaches. Here, we are not dealing with a maintenance issue but rather a design defect issue.