**Eusebio KHO, M.D., Appellant–Plaintiff,**

v.

**Deborah PENNINGTON, Findling Germano & Pennington, P.C., and Ruby Miller, Appellees–Defendants.**

No. 72A04–0507–CV–373.

Court of Appeals of Indiana.

May 5, 2006.

Jon R. Pactor, Indianapolis, for Appellant.

John C. Trimble, Lisa M. Dillman, Lewis Wagner LLP, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Attorney Deborah Pennington represented Ruby Miller in a wrongful death action Miller brought against the Scott County Memorial Hospital, Dr. Eusebio Kho, and another doctor. The lawsuit alleged the Hospital's emergency room had negligently treated or released Tracy Merle Lee. Dr. Kho was on-call when Lee was treated and Pennington dismissed Dr. Kho after she determined he was not on duty at that time.

Dr. Kho sued Pennington, her law firm, and Miller (collectively "Pennington") for malicious prosecution and the trial court granted summary judgment for Pennington. Dr. Kho raises six issues on appeal, which we consolidate [1] and restate [2] as:

1. Whether Pennington lacked probable cause to sue Dr. Kho when some records indicated another doctor was on duty in the emergency room at the time Lee was treated but other records included Dr. Kho's name and one referred to him as "attending physician" (App. at 36);

2. Whether the trial court erred in declining to strike an affidavit [3] in which an attorney opined it was reasonable for Pennington to believe Dr. Kho was involved in Lee's treatment; and

3. Whether Pennington's violation of a statute that prohibits identification of a medical malpractice defendant in a complaint filed in court while a complaint is being considered by a medical review panel provides Dr. Kho a private right of action.

We affirm.[4]

## FACTS

Pennington's law firm represented Miller, who is the personal representative of Lee's estate. Lee died two days after he was treated at the Scott County Memorial Hospital emergency room. In January 2001, Miller brought a proposed medical malpractice complaint before the Department of Insurance against the Hospital, Dr. Daniel Case, and Dr. Kho, and in February of 2001 she brought an action in

---

1. Because we find Pennington had ample probable cause to include Dr. Kho in the lawsuit, we need not address Dr. Kho's allegation Pennington acted with malice. Nor need we address Pennington's argument that Dr. Kho's claim he was improperly named in Miller's lawsuit is *res judicata* because his allegation Pennington violated Ind.Code § 34–18–8–7 was decided against him in the underlying action.

2. Dr. Kho offers as an issue "Was Miller entitled to summary judgment when she did not move for it and did not submit any designated materials?" (Appellant's Br. of Eusebio Kho, M.D. at i) (hereinafter "Kho Br."). Dr. Kho asserts in his Summary of the Argument:

> *Miller did not move for summary judgment* and did not submit any designated evidence. The record is void of any evidence of what she knew when she sued Dr. Kho, so the issues of probable cause and malice as to her were not even before the court. Moreover, the standard for malicious prosecution against her differs from the standard for the attorneys. Thus, the Court of Appeals should vacate the judgment in her favor. There is no way that Miller is entitled to a summary judgment.

(Emphasis supplied.) He states in his Statement of the Case "the attorney-defendants,

but not Ruby Miller, moved for summary judgment...." (*Id.* at 1.)

In fact, Miller was *explicitly* named as a movant in the summary judgment motion, which motion was accompanied by designated evidence. The trial court explicitly noted in its ruling on Dr. Kho's motion to correct error that "Pennington *and Miller* filed a motion for summary judgment on August 27, 2004." (*Id.* at 6) (emphasis supplied).

Though he presents this as an issue and repeats it in his summary of the argument, Dr. Kho does not present argument in his appellant's brief on this issue. He again, however, states in his reply brief *"Miller never filed a motion for summary judgment,* let alone designated evidence.... Therefore, Miller cannot surreptitiously bootstrap on Pennington's motion." (Reply Br. of Eusebio Kho, M.D. at 3) (hereinafter "Kho Reply Br.") (emphasis supplied). We admonish Dr. Kho's counsel to refrain from mischaracterizing the record.

3. Dr. Kho does not present this as an issue in his Statement of the Issues, but he devotes four pages to this argument in his brief and almost three more in his reply brief.

4. We heard oral argument in Indianapolis on March 20, 2006.

the Scott Circuit Court naming Dr. Kho as a defendant. The lawsuit also named the Hospital, Dr. Case, and the Sterling Healthcare Group, Inc.

Dr. Kho moved to dismiss and the trial court denied the motion. In August 2001, Pennington dismissed Dr. Kho by stipulation. In January 2003, Dr. Kho brought a malicious prosecution action against Pennington. Pennington moved for and was granted summary judgment. Dr. Kho's motion to correct error was denied.

## DISCUSSION AND DECISION

Summary judgment should be granted only if the evidence authorized by Ind. Trial Rule 56(C) shows there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. T.R. 56(C). We view the facts and reasonable inferences drawn from those facts in the light most favorable to the non-moving party. *Kennedy v. Guess, Inc.*, 806 N.E.2d 776, 779 (Ind.2004), *reh'g denied.* On appeal from summary judgment, we face the same issues that were before the trial court and analyze them the same way, although the trial court's decision is "clothed with a presumption of validity." *Id.* The non-movant bears the burden of demonstrating the grant of summary judgment was erroneous, but we carefully assess the trial court's decision to ensure that the non-movant was not wrongly denied his or her day in court. *Id.*

### 1. *Probable Cause*

In a malicious prosecution action the plaintiff has the burden of proving: 1) the defendant instituted, or caused to be instituted, a prosecution against the plaintiff; 2) the defendant acted maliciously in doing so; 3) the prosecution was instituted without probable cause; and 4) the prosecution terminated in the plaintiff's favor. *Wong v. Tabor*, 422 N.E.2d 1279, 1283 (Ind.Ct.App.1981).[5] Termination in favor of a prior defendant for purposes of a claim of malicious prosecution may occur, as it did here, by the withdrawal of the proceedings by the person bringing them. *Id.* at 1284.

In reviewing a lawyer's decision to bring suit, we are mindful that an attorney's role is to facilitate access to the judicial system for any person seeking legal relief. *Id.* at 1285. As such, the probable cause determination must encompass consideration of the law's desire to fully meet the client's needs. *Id.*

An attorney is under an ethical duty to avoid suit where the only purpose is to harass or injure, but if a balance must be struck between the desire of an adversary to be free from unwarranted accusations and the need of the client for undivided loyalty, the client's interests must be paramount. *Id.* at 1286. Therefore, any standard of probable cause must preserve the attorney's duty to the client to present the case vigorously in a manner as favorable to the client as the rules of law and professional ethics will permit. *Id.* Mere negligence in asserting a claim is not sufficient to subject an attorney to liability for bringing suit. "To create liability only for negligence, for the bringing of a weak case, would be to destroy [an attorney's]

---

**5.** Dr. Kho asserts *Wong* means "on this motion for summary judgment, Pennington had to prove (1) that there was no genuine issue of issue of [sic] material fact that she subjectively believed the case merited filing and (2) that there was no genuine issue of material fact that objectively the case had probable cause." (Kho Br. at 10–11.) As *Wong* involved the grant of a motion for judgment on the evidence subsequent to a jury verdict, 422 N.E.2d at 1290, it is not apparent that it establishes what Pennington had to prove "on this motion for summary judgment."

efficacy as advocate of his client and his value to the court, since only the rare attorney would have the courage to take other than the 'easy' case." *Id.* (quoting *Berlin v. Nathan*, 64 Ill.App.3d 940, 21 Ill.Dec. 682, 381 N.E.2d 1367, 1376 (1978), *cert. denied* 444 U.S. 828, 100 S.Ct. 53, 62 L.Ed.2d 36 (1979), *reh'g denied* 444 U.S. 974, 100 S.Ct. 470, 62 L.Ed.2d 390 (1979)).

██ We recognized in *Wong* that the effort to protect every citizen's free access to the courts might subject innocent persons to the publicity, expense and other burdens of defending ill-founded lawsuits. But "the chilling effect that a broad rule of attorney liability would have upon the legal system, and ultimately upon its popular acceptance as a means of dispute resolution, appears to outweigh the value of the protection it would afford to those who might be deemed 'innocent' defendants." *Id.*

An attorney has probable cause to represent a client in litigation when, after a reasonable investigation and industrious search of legal authority, he has an honest belief that his client's claim is tenable in the forum in which it is to be tried. The test is twofold. The attorney must entertain a subjective belief in that the claim merits litigation and that belief must satisfy an objective standard. *Id.* at 1287 (quoting *Tool Research & Engineering Corp. v. Henigson*, 46 Cal. App.3d 675, 120 Cal.Rptr. 291, 297 (1975)).

██ The objective standard that governs the reasonableness of an attorney's action in instituting litigation for a client is whether the claim merits litigation against the defendant in question on the basis of the facts known to the attorney when suit is commenced. *Id.* at 1288. The question is answered in the negative if no competent and reasonable attorney familiar with the law of the forum would consider the claim worthy of litigation on the basis of the facts known by the attorney who instituted suit. *Id.* Where there is some factual basis for bringing a claim, lack of probable cause cannot be based upon a negligent failure to investigate thoroughly. *Id.* at 1289.

In *Wong,* as here, a doctor brought a malicious prosecution action against the attorney who had represented a medical malpractice claimant in an action against the doctor. Before filing suit, the attorney spoke with his clients, visited the hospital, spoke with hospital personnel, reviewed medical records, and conducted legal research. The malpractice plaintiff advised counsel that the doctor had diagnosed her problem and referred her to a surgeon. The plaintiff's husband told the attorney that hospital personnel had indicated the doctor was present at the surgery. The attorney knew the doctor and another surgeon had previously jointly performed similar surgery on the husband. In fact, the doctor had not participated in the plaintiff's surgery. His only involvement in the plaintiff's hospital care was prescribing a laxative for her. The doctor moved to dismiss and for summary judgment, and the attorney did not object.

We determined the attorney had probable cause to include the doctor in the lawsuit. He had only thirty days to investigate the matter prior to filing suit and there were a number of potential defendants involved. There was reason to believe from the hospital records the doctor was involved in the plaintiff's post-surgery care, and counsel testified he had grounds for believing the doctor may have been responsible for negligently referring the plaintiff to her surgeon. *Id.*

The doctor suggested the attorney had failed to fully investigate his claim, but we noted:

Were we to conclude that liability inures to an attorney where he simply did not know enough about a case at the time of filing, many a successful lawsuit would never have been or never would be filed since frequently an attorney does not get a case until just prior to the prescription date, and the evidence is not fully discovered and developed until after suit is filed.

*Id.*

The doctor also asserted that even if there was probable cause to initiate suit, counsel was liable for wrongfully continuing the matter once he discovered, or should have discovered, the doctor did not participate in the surgery or post-surgery care. Liability may arise through the wrongful continuation of a civil proceeding. *Id.* We noted that, assuming there is probable cause to commence an action, two principal injuries might arise from malicious prosecution: 1) the publicity attending being named a defendant, and 2) the necessity of employing counsel to defend oneself. *Id.* at 1289–90. Those have already occurred with the bringing of the action and are not a basis for recovering damages for its

continuation. *Id.* at 1290. At that point the rules of procedure addressing dismissals and summary judgment provide aid against unduly protracting the litigation. *Id.* "It therefore appears to us that the considerations upon which liability may be predicated for wrongfully continuing an action when there existed probable cause for its commencement are quite narrow." *Id.* We accordingly found no basis for liability for wrongfully continuing the litigation. *Id.*

■ Based on the information available to her, Pennington had ample probable cause to include Dr. Kho as a defendant when she filed the lawsuit. Dr. Kho notes he was "the on-call doctor, was never called; he never formed a patient-physician relationship with Mr. Lee; and he never treated Dr. [sic] Lee and did not discharge him from the hospital." (Kho Br. at 9.) Dr. Kho also asserts an absence of probable cause because Pennington "knowingly and blatantly violated the unequivocal prohibition under I.C. 34–18–8–7 and caused the very harm that the legislature intended to avoid. This is a no-brainer."[6] (Kho Br. at 19.)

---

**6.** This reference to an "unequivocal prohibition" mirrors Dr. Kho's suggestions throughout his brief and reply brief that this section of the Indiana Code prohibits a lawsuit during the pendency of the medical review panel's proceedings. It does not. Rather, it explicitly *authorizes* such a lawsuit.

Section 34–18–8–7 provides:
(a) Notwithstanding section 4 of this chapter, beginning July 1, 1999, a claimant *may commence an action in court for malpractice at the same time* the claimant's proposed complaint is being considered by a medical review panel. In order to comply with this section, the:
(1) complaint filed in court may not contain any information that would allow a third party to identify the defendant;
(2) claimant is prohibited from pursuing the action; and

(3) court is prohibited from taking any action except setting a date for trial, an action under IC 34–18–8–8 (or IC 27–12–8–8 before its repeal), or an action under IC 34–18–11 (or IC 27–12–11 before its repeal); until section 4 of this chapter has been satisfied.
(b) Upon satisfaction of section 4 of this chapter, the identifying information described in subsection (a)(1) shall be added to the complaint by the court.
(Emphasis supplied.) Section 4 provides:
Notwithstanding section 1 of this chapter, and except as provided in sections 5 and 6 of this chapter, an action against a health care provider may not be commenced in a court in Indiana before:
(1) the claimant's proposed complaint has been presented to a medical review panel established under IC 34–18–10 (or IC 27–12–10 before its repeal); and

 Dr. Kho's argument appears to be that it was not necessary for Pennington to name him in her lawsuit while the administrative proceedings were pending in order to avoid a statute of limitations problem: "Thus, as a matter of law, defendants had no probable cause to sue Dr. Kho in state court and name him." (*Id.* at 20.) Dr. Kho offers no authority to support his apparent premise that such a filing, even though explicitly authorized by statute, demonstrates lack of "probable cause" for purposes of a malicious prosecution analysis just because the doctor is improperly *named.* We accordingly decline to reverse on that ground. *See* Ind. Appellate Rule 46(A)(8) ("The argument must contain the contentions of the appellant on the issues presented supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on.") A party waives an issue where he fails to develop a cogent argument or provide adequate citation to authority and portions of the record. *Lyles v. State,* 834 N.E.2d 1035, 1050 (Ind.Ct.App.2005), *reh'g denied, trans. denied* 841 N.E.2d 191 (Ind.2005).

Pennington does not address in her brief the designated evidence suggesting Dr. Kho's possible involvement in Miller's treatment. She instead asserts the affidavit of Attorney Frederick Hovde, which is discussed at greater length below, establishes she had probable cause to include Dr. Kho in the lawsuit. However, we note there was ample evidence suggesting Dr. Kho's involvement to support a determination "the claim merits litigation against the defendant in question on the basis of the

facts known to the attorney when suit is commenced." *Wong,* 422 N.E.2d at 1288.

That evidence includes the following. At least one hospital document lists Dr. Kho as "attending physician." (App. at 27.) Another lists him as a doctor who referred Lee. (*Id.* at 29–30.) Dr. Kho is listed on the Hospital's "emergency registration summary" as "ADN DR." (*Id.* at 31). A hospital blood test report states "DOCTOR: KHO." (*Id.* at 35.) As Pennington correctly notes in her affidavit, Dr. Kho's name "appeared on nearly every page of Mr. Lee's records." (*Id.* at 25.) This was ample evidence to support the trial court's determination Pennington had probable cause to include Dr. Kho in the lawsuit.

### 2. *The Affidavit*

 As part of her designation of evidence Pennington submitted an affidavit of Attorney Frederick Hovde. He stated that, after examining the records of Lee's treatment, his opinion was that it was reasonable for Pennington to believe Dr. Kho participated in Lee's care and treatment and for her to join Dr. Kho as a party. Dr. Kho moved to strike the affidavit and the motion was denied. The trial court found, based on the affidavits Pennington submitted, that Pennington had met her burden to show a competent and reasonable attorney familiar with the law of the forum would consider the claim worthy of litigation on the basis of the facts known by the attorney who instituted suit. *See Wong,* 422 N.E.2d at 1288.

 On appeal, Dr. Kho characterizes the affidavit as "bland, unsubstantiated, conclusory, and obsolete" (Kho Br. at 26),

---

(2) an opinion is given by the panel.

In his reply brief Dr. Kho again asserts "no reasonable attorney would justify suing Dr. Kho in state court and naming him in blatant violation of I.C. 34–1–8–7 [sic], which *barred*

*a suit against the doctor when a proposed complaint is pending administratively."* (Kho Reply Br. at 2) (emphasis supplied).

We admonish Dr. Kho's counsel to refrain from mischaracterizing the statute.

as well as "defective, ambiguous [and] irrelevant" (*id.* at 30).[7] We review a trial court's decision to admit or exclude evidence generally, and its decision on a motion to strike specifically, for an abuse of discretion. *Wilkinson v. Swafford,* 811 N.E.2d 374, 388 (Ind.Ct.App.2004), *abrogated in part on other grounds by Willis v. Westerfield,* 839 N.E.2d 1179 (Ind.2006). We will reverse such an exercise of discretion only when the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

■ Dr. Kho first[8] argues the affidavit should have been struck because Hovde "does not state his reasoning." (Kho Br. at 28.) He relies on *Doe v. Shults–Lewis Child & Family Serv., Inc.,* 718 N.E.2d 738, 750 (Ind.1999), where our Indiana Supreme Court stated "an expert opinion affidavit submitted in a summary judgment proceeding, in addition to asserting admissible facts upon which the opinion is based, *must also state the reasoning or methodologies* upon which it is based." In the context of the case before us, we decline to find that standard is applicable or would require exclusion of the Hovde affidavit.

The *Shults–Lewis* court addressed the role of expert opinion evidence in cases where plaintiffs claim repressed memory of childhood sexual abuse has caused them to delay filing until after the statutory period of limitations has expired. The affidavit at issue there was by a psychiatrist who opined, based on his interview with the plaintiff, his experience with other victims of childhood trauma, and his analysis

---

7. He offers no argument why an affidavit must be stricken or is otherwise improper because it is "bland."

8. Much of Dr. Kho's argument on this issue is premised on factual mischaracterizations of the affidavit and is thus impossible to address. For example, he correctly notes it is improper for an expert to testify as what another person believed. Therefore, he argues, Hovde could not testify that Pennington believed Dr. Kho participated in Lee's treatment. But Hovde did not so testify. Rather, he testified only that in his opinion, such a belief would have been *reasonable* in light of what the hospital records showed.

 Dr. Kho also asserts the "facts impeach Mr. Hovde's affidavit ... Pennington had no facts that Dr. Kho treated Mr. Lee ... [n]one of the hospital or other medical records stated that Dr. Kho had treated Mr. Lee or discharged him." (Kho Br. at 29.) As explained above, this statement mischaracterizes the designated evidence. At least one hospital document lists Dr. Kho as "attending physician." (App. at 27.) Another lists him as a doctor who referred Lee. (*Id.* at 29–30.) Dr. Kho is listed on the Hospital's "emergency registration summary" as "ADN DR." (*id.* at 31). A hospital blood test report states "DOCTOR: KHO." (*Id.* at 35.) As Pennington noted in

her affidavit, Dr. Kho's name "appeared on nearly every page of Mr. Lee's records." (*Id.* at 25.)

 Dr. Kho states Hovde "[a]verred that Dr. Kho 'participated in the care and treatment of Mr. Lee.'" (*Id.* at 28.). Hovde averred no such thing. As indicated above, the affidavit reflected that in Hovde's opinion, a belief Dr. Kho was involved would have, in light of what the hospital records showed, been *reasonable.*

 Dr. Kho asserts in his reply brief the affidavit is "not clear" because Hovde "opines that [Pennington] had cause to file a 'claim' against Dr. Kho." (Kho Reply Br. at 10.) The affidavit includes no such statement.

 We again admonish Dr. Kho's counsel to refrain from such misrepresentations of the record, and we remind counsel that misrepresentations of this nature can expose him to sanctions. In *Young v. Butts,* 685 N.E.2d 147, 151 (Ind.Ct.App.1997), Young's counsel made affirmative misrepresentations of the evidence in the record, which we found "particularly offensive because they would, if true, directly affect the propriety of the trial court grant of judgment on the evidence." Based on counsel's misrepresentations and other deficiencies in the brief we found Young's appeal "frivolous, wholly without merit, and brought in bad faith," and we remanded so that sanctions could be imposed. *Id.*

of the Minnesota Multiphasic Personality Inventory taken by the plaintiff, that the plaintiff repressed all memory of childhood abuse. *Id.* at 749.

The court noted if expert opinion testimony is needed, a "witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *Id.* at 748 (quoting Ind. Evidence R. 702). But the court went on to note Evid. R. 702(b) "imposes an additional requirement that, in order for the testimony to be admitted, the court must be satisfied that the expert *scientific* testimony is based on reliable *scientific principles*." *Id.* at 748–49 (emphases supplied). Dr. Kho does not explain why Hovde's affidavit regarding an attorney's probable cause to bring a malpractice action would implicate the "additional requirement" of Evid. R. 702(b), and we decline to subject an attorney's affidavit concerning the reasonableness of another attorney's actions to analysis of the reliability of the "scientific principles" used.

We instead follow *McCullough v. Allen,* 449 N.E.2d 1168, 1170 (Ind.Ct.App.1983). That case, like the one before us, addressed an affidavit by an attorney expressing an opinion in a malicious prosecution action as to probable cause for bringing the underlying lawsuit. We not-

ed a qualified attorney's legal opinion as to an ultimate fact in issue is admissible unless it addresses matters within the common knowledge and experience of ordinary persons. *Id.* The affidavit at issue was virtually identical to the Hovde affidavit in the case before us.[9] We found it "clearly did not state matters of common knowledge. Rather, it was an appropriate expression of expert opinion on the existence of probable cause for Allen's suit against McCullough." *Id.*

 Whether a reasonable attorney would consider a claim worthy of litigation is a question that can be answered only by an expert familiar with the law and with the standards employed by reasonable attorneys. *Id.* The affidavit in *McCullough* was "couched in the terminology of *Wong v. Tabor*," and we found it "clearly admissible to prove that at least one competent and reasonable attorney considered the plaintiff's claim worthy of litigation." *Id.* The trial court did not err in declining to strike the Hovde affidavit.

3. *Private action[10] for violation of Ind. Code § 34–18–8–7*

 When a civil cause of action is premised on violation of a duty imposed by statute, the initial question to be deter-

9. Dr. Kho asserts in his reply brief the two affidavits were not "virtually identical" because the *McCullough* affidavit "averred that the affiant had 'reviewed ... the law in the area'" and the affidavit in the case before us "omits any such averment." (Kho Reply Br. at 10.) Dr. Kho offers no authority as to the significance of that distinction, nor does he acknowledge the affidavit in the case before us did aver "I am ... familiar with the laws of the state. I practice regularly in and have more than 24 years of experience with cases involving issues of medical malpractice." (App. at 40.)

10. Dr. Kho asserts he also has a claim for "statutory negligence for violation of the stat-

ute." (Kho Br. at 26.) However, he offers no argument but instead provides only a citation to *Rubin v. Johnson*, 550 N.E.2d 324, 329 (Ind.Ct.App.1990), *trans. denied.* He does not explain the significance, if any, of that decision. *Rubin* addresses in general terms when violation of a statute is negligence *per se*, but it does not involve the statute under which Dr. Kho asserts he has a claim. Accordingly, to the extent he offers a "statutory negligence" claim independent of his argument there is a private right of action under the statute, we decline to address it. *See* App. R. 46(A)(8).

mined is whether the statute in question confers a private right of action. *Estate of Cullop v. State,* 821 N.E.2d 403, 408 (Ind. Ct.App.2005), *reh'g denied.* The determination whether a civil cause of action exists begins with an examination of legislative intent. *Id.* This involves discerning whether the statute is designed to protect the general public and whether the statutory scheme contains an enforcement mechanism or remedies for violation of the duty. *Id.*

 As a general rule, a private party may not enforce rights under a statute designed to protect the public in general and containing a comprehensive enforcement mechanism. *Id.* Further, when legislation expressly provides a particular remedy, courts should not expand the coverage of the statute to subsume other remedies: "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Id.* at 409 (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers,* 414 U.S. 453, 459, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974), *reh'g denied* 415 U.S. 952, 94 S.Ct. 1478, 39 L.Ed.2d 568 (1974)). Whether a statute creates a private cause of action is a question of law for the court. *Whinery v. Roberson,* 819 N.E.2d 465, 474 (Ind.Ct. App.2004), *trans. dismissed.*

 In determining legislative intent, it is important to note where the statute at issue is located within the Indiana Code. *Roberts v. Sankey,* 813 N.E.2d 1195, 1198 (Ind.Ct.App.2004), *reh'g denied, trans. denied* 831 N.E.2d 742 (Ind.2005). Ind.Code § 34–18–8–7 is included in that part of the Medical Malpractice Act that sets out the prerequisites and procedures for commencing a malpractice action. It provides:

(a) Notwithstanding section 4 of this chapter, beginning July 1, 1999, a claimant *may commence an action in court for malpractice at the same time the claimant's proposed complaint is being considered by a medical review panel.* In order to comply with this section, the:

(1) complaint filed in court *may not contain any information that would allow a third party to identify the defendant;*

(2) claimant is prohibited from pursuing the action; and

(3) court is prohibited from taking any action except setting a date for trial, an action under IC 34–18–8–8 (or IC 27–12–8–8 before its repeal), or an action under IC 34–18–11 (or IC 27–12–11 before its repeal); until section 4 of this chapter has been satisfied.

(b) Upon satisfaction of section 4 of this chapter, the identifying information described in subsection (a)(1) shall be added to the complaint by the court.

(Emphasis supplied.) The summary judgment for Pennington was entered without findings, but in denying Dr. Kho's motion to correct error the court stated that section "provides no manner of relief to a doctor improperly named in a malpractice suit." (App. at 7.)

Dr. Kho's argument, in its entirety, is that the statute

is clearly designed to protect the individual doctors [11] who are already subject to an administrative proceeding. The very nature of a lawsuit against a doctor is personal to the doctor, and the remedy sought is a judgment for which the doctor would be personally responsible. Importantly, Indiana Code 34–18–8–7 is located in the Indiana Code's provisions

---

11. Pennington notes the statute does not guarantee anonymity to the health care provider being sued. Dr. Kho's name must have appeared in the summons and the proposed complaint filed with the Department of Insurance, both of which are public record. Therefore, she asserts, Dr. Kho was not damaged when he was named in the lawsuit.

about torts and civil remedies, and not in the licensure sections as was the case in [*Roberts v. Sankey*, 813 N.E.2d 1195 (Ind.Ct.App.2004)].

(Kho Br. at 26.) He offers no authority in support of this argument.

Pennington notes the Medical Malpractice Act was designed to curtail liability for medical malpractice, not to expand it. *Chamberlain v. Walpole*, 822 N.E.2d 959, 963 (Ind.2005). As such, it does not create an independent cause of action. *Breece v. Lugo*, 800 N.E.2d 224, 227 (Ind.Ct.App. 2003) (holding the Act did not create a separate cause of action for wrongful death, and it affects the right of action for wrongful death only to the extent that it limits recovery and establishes the requirement of submission of the claim to the medical review panel), *reh'g denied, trans. denied* 831 N.E.2d 737 (Ind.2005). Accordingly, she argues, that section of the Act "presents procedural requirements, which if not followed result in *procedural* remedies." (Br. of Appellees at 15–16) (emphasis in original). We agree.

We recently addressed the remedy for non-compliance with that section in *Hubbard v. Columbia Women's Hosp. of Indianapolis*, 807 N.E.2d 45, 51 (Ind.Ct.App. 2004), *reh'g denied*. Hubbard did not comply with the statute, as her complaint contained information that would allow a third party to identify the defendants. We held the proper course of action when a plaintiff fails to comply with the Medical Malpractice Act is for the trial court to dismiss the complaint without prejudice, thereby allowing the plaintiff to refile after the medical review panel has issued its opinion. *Id.* We accordingly decline to hold this procedural statute provides a private right of action by a physician who is named in violation of that section.

## CONCLUSION

The trial court properly granted summary judgment for Pennington, as she had probable cause to include Dr. Kho in Miller's lawsuit and there is no private action available to Dr. Kho for Pennington's violation of Ind.Code § 34–18–8–7. We therefore affirm.

Affirmed.

FREIDLANDER, J., and CRONE, J., concur.