

**FILED**
Aug 17 2015, 8:33 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Kevin W. Vanderground
Church, Church, Hittle & Antrim

Rick C. Gikas
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Gregory A. Crisman
Carly A. Brandenburg
Eichhorn & Eichhorn, LLP
Hammond, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Angelique Lockett and Lanetra
Lockett,

*Appellants-Plaintiffs,*

v.

Planned Parenthood of Indiana,
Inc., and Cathy McGee,

*Appellees-Defendants*

August 17, 2015

Court of Appeals Case No.
45A05-1407-CT-340

Appeal from the Lake Superior Court
The Honorable William E. Davis,
Judge
Cause No. 45D05-1109-CT-175

**Bailey, Judge.**

# Case Summary

Angelique Lockett ("Angelique") and her mother Lanetra Lockett ("Lanetra")[1] (collectively, "the Locketts") appeal the trial court's grant of summary judgment in favor of Planned Parenthood of Indiana, Inc.[2] ("Planned Parenthood") after Angelique, then a seventeen-year-old minor, intentionally misrepresented herself to be eighteen-years-old and obtained an abortion at a Planned Parenthood clinic without Lanetra's consent. We affirm the trial court's conclusion that Indiana Code chapter 16-34-2 does not confer upon the Locketts a private cause of action to enforce the statutory provisions. As to the Locketts' remaining common law claims against Planned Parenthood, we hold that Planned Parenthood did not owe Lanetra a duty at common law and Lanetra is not in the class of persons intended to be protected by Indiana Code section 16-34-2-4 (parental consent and judicial bypass provisions); therefore, Planned Parenthood is entitled to summary judgment on Lanetra's claims for negligence and negligence *per se*. As to Angelique's claims, we affirm the court's grant of summary judgment on the grounds that (1) an immunity provision of the Health Care Consent Act ("HCCA")[3] relieves Planned Parenthood of civil liability under these facts, and (2) Angelique is equitably estopped from pursuing her claims due to her fraudulent acts. However, to the

---

[1] The designated materials occasionally present mother's name as "LaNetra." We adopt the styling used in the Appellants' Brief.

[2] Now Planned Parenthood of Indiana and Kentucky, Inc.

[3] *See* I.C. § 16-36-1-10(a).

extent the trial court's order appears to have dismissed all of the Locketts' claims against defendant Cathy McGee ("McGee") even though McGee may never have been served,[4] we reverse and remand.

# Issues

The Locketts present three issues on appeal, which we consolidate and restate as the following one: whether the trial court erred in granting summary judgment in favor of Planned Parenthood.

We also address *sua sponte* the status of the Locketts' claims against McGee.

# Facts and Procedural History

In early 2010, then seventeen-year-old Angelique suspected she was pregnant and informed her boyfriend's mother, McGee. Present during the conversation with McGee was Raven Francis ("Francis"), the girlfriend of another of McGee's sons. Although unsure if she was pregnant, Angelique discussed with McGee and Francis the possibility of obtaining an abortion at Planned Parenthood. Francis, who was eighteen-years-old at the time, offered to loan Angelique her Indiana State-issued identification ("ID") and Medicaid cards so that Angelique could represent herself to Planned Parenthood as old enough to independently consent to medical treatment. Francis's boyfriend opined that

---

[4] McGee is not an active party to this appeal.

Angelique and Francis resembled each other, even though Angelique weighed twenty pounds less and stood four inches shorter than the weight and height listed on Francis's ID card. Angelique was skeptical that the ruse would work, but took Francis's ID. Angelique did not tell her mother, Lanetra, of her suspected pregnancy or plans to visit Planned Parenthood.

On January 22, 2010, McGee took Angelique to Planned Parenthood's Merrillville office. Angelique stated that the "whole purpose of going there was first to see if I was pregnant." (App. 130.) Upon arrival, Angelique represented herself to the office staff as eighteen-year-old Francis, and McGee, using her own name, posed as Angelique's mother. Angelique presented Francis's ID to the front office staff, who looked at it and made a copy. The employee who accepted the ID attested that she checked the ID, "compared the photograph to the young woman standing" in the office, "saw no reason to doubt the identity that the patient had presented[,]" and "observed that the patient's identification showed her age to be 18." (App. 73.) Angelique and McGee were then given forms to fill out, some of which McGee filled out on Angelique's behalf.

During the visit, Angelique underwent an ultrasound and blood and urine tests. The tests confirmed that Angelique was pregnant and in her first trimester. After undergoing counseling outside of McGee's presence, Angelique forged the name "Raven Francis" on a form consenting to an abortion and acknowledging that she had received the statutorily-prescribed information regarding the procedure and abortion alternatives. Angelique specifically recalled signing this form, further describing it as:

> [a] form saying nobody was forcing me physically to come in and have an abortion, a form that says I am Raven Francis. Those are the two main forms I really remember, a list of questions saying nobody's forcing you, and are you Raven Francis is like the main paperwork that I signed her name.

(App. 156-57.) Angelique did not tell anyone at Planned Parenthood that she was actually Angelique Lockett or that McGee was not her mother. McGee paid in advance for the procedure.

[7] Six days later, on January 28, 2010, Angelique returned to Planned Parenthood. Angelique was not asked to present ID during the second appointment, but she again represented herself as Francis. The copy of Francis's ID made on the first visit was included in Angelique's patient file, which the physician reviewed and found "to be in order." (App. 76.) McGee was not present at the beginning of the appointment, but arrived later. An abortion was performed. Lanetra, who was not aware that her daughter was pregnant and considering an abortion, did not consent to the procedure.

[8] On August 30, 2011, Angelique, now an adult, and Lanetra filed a complaint against Planned Parenthood and McGee, alleging that Angelique and Lanetra were harmed when Planned Parenthood's physician performed an abortion on Angelique without Lanetra's consent.

[9] On December 5, 2013, Planned Parenthood filed a motion for summary judgment, in which it argued that an immunity provision of the HCCA[5] relieved Planned Parenthood of liability and that the Locketts should be equitably estopped from pursuing their claims due to Angelique's misrepresentations. After the Locketts filed their response on May 28, 2014, Planned Parenthood filed a reply brief on June 5, 2014, in which it also argued that Indiana's statutes governing abortion, including Indiana Code chapter 16-34-2, do not create a private cause of action for individuals such as the Locketts.

[10] On June 13, 2014, the trial court held a hearing on Planned Parenthood's motion for summary judgment. The court also heard argument on the Locketts' motion to strike portions of affidavits designated by Planned Parenthood in support of its summary judgment motion.

[11] On June 20, 2014, the trial court entered an order granting the Locketts' motion to strike certain evidence. The court also found: "There is no genuine issue that the Statute I.C. § 16-34-2-4 [governing parental consent and judicial bypass procedures for abortions performed on minors] does not confer on the Plaintiff a private right of action, which would allow her to bring a civil suit against the Defendants." (App. 1.) The trial court then granted Planned Parenthood's motion for summary judgment. The court also dismissed the Locketts' complaint in its entirety and entered "Judgment for Defendants."

---

[5] *See* I.C. § 16-36-1-10(a).

[12]     The Locketts now appeal the trial court's grant of summary judgment in favor of Planned Parenthood.

# Discussion and Decision

## Standard of Review

[13]     Indiana Trial Rule 56 governs motions for summary judgment. Trial Rule 56(C) provides that a trial court shall grant summary judgment for the movant "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When we review a grant or denial of a motion for summary judgment, our standard of review is the same as for the trial court. *Asklar v. Gilb*, 9 N.E.3d 165, 167 (Ind. 2014). The moving party must show there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Id.* If the moving party carries its burden, then the non-movant must present evidence establishing the existence of a genuine issue of material fact. *Id.*

[14]     When we decide whether summary judgment was properly granted or denied, we consider only the evidence the parties specifically designated to the trial court. T.R. 56(C), (H). We construe all facts and all reasonable inferences established by the designated evidence in favor of the non-moving party. *Asklar*, 9 N.E.3d at 167. "As a reviewing court, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment but rather may affirm a grant of summary judgment upon any theory supported by the evidence." *Keaton & Keaton v. Keaton*, 842 N.E.2d 816, 821 (Ind. 2006).

# Private Cause of Action

[15] The Locketts argue that the trial court erred when it entered summary judgment on the basis that Indiana Code chapter 16-34-2 does not confer upon the Locketts a private cause of action to enforce the statutory provisions.[6]

[16] When a civil cause of action is premised upon violation of a duty imposed by statute, the initial question to be determined by the court is whether the statute in question confers a private right of action. *Estate of Cullop v. State*, 821 N.E.2d 403, 408 (Ind. Ct. App. 2005), *reh'g denied*. To determine whether a civil cause of action exists, we first examine legislative intent. *Id.* We determine whether the statute is designed to protect the general public and whether the statutory scheme contains an enforcement mechanism or remedies for violation of the duty. *Id.* A private party generally may not enforce rights under a statute designed to protect the public in general and containing a comprehensive enforcement mechanism. *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1260 (Ind.

---

[6] As an initial matter, the Locketts argue that the trial court erred in even considering Planned Parenthood's argument that the statute does not create a private cause of action. The argument was first raised in Planned Parenthood's reply brief to the trial court, and the Locketts argue that they did not have ample time to respond. However, where the trial court could have independently discovered the legal theory, the Locketts have not shown prejudice arising from the trial court's consideration of it. *See Severson v. Bd. of Trs. of Purdue Univ.*, 777 N.E.2d 1181, 1203 (Ind. Ct. App. 2002) (holding that new arguments raised in the defendants' reply brief in support of a motion for summary judgment could be considered by the trial court because the plaintiffs "failed to show that they suffered more prejudice by any additional legal authority in the . . . defendants' reply brief than they would have suffered had the trial court discovered the legal theories independently"), *trans. denied*. Furthermore, because we may affirm a grant of summary judgment upon any theory supported by the designated evidence, *Keaton*, 842 N.E.2d at 821, the legal theory, if not properly before the trial court then, is properly available to us today.

2000). Whether a statute creates a private right of action is a question of law for the court. *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 187 (Ind. 2011).

[17] Indiana Code chapter 16-34-2 is, in essence, a criminal statute that carefully delineates the circumstances under which abortion is legal in Indiana. Section 16-34-2-1 (2008)[7] provides: "Abortion shall in all instances be a criminal act, except when performed under [certain defined] circumstances[.]" Although generally a criminal act, legal abortions occur for reasons and in circumstances determinable only in "the professional, medical judgment of the pregnant woman's physician." I.C. §§ 16-34-2-1(a)(1)-(3). For example, abortion is legal if performed

> (1) During the first trimester of pregnancy for reasons based upon the professional, medical judgment of the pregnant woman's physician if:
>> (A) the abortion is performed by the physician;
>> (B) the woman submitting to the abortion has filed her consent with her physician. However, if in the judgment of the physician the abortion is necessary to preserve the life of the woman, her consent is not required; and
>> (C) the woman submitting to the abortion has filed with her physician the written consent of her parent or legal guardian if required under section 4 of this chapter.

I.C. § 16-34-2-1(a)(1). Section 16-34-2-1.1 provides that a physician may only perform an abortion with the "voluntary and informed consent of the pregnant woman upon whom the abortion is to be performed[,]" and specifies an

---

[7] We refer to the version of the statute in effect at the time the abortion was performed.

extensive list of procedures that must be followed before a physician is considered to have obtained voluntary and informed consent.[8]  Furthermore, the statute provides that "[n]o physician shall perform an abortion on an unemancipated pregnant woman less than eighteen (18) years of age without first having obtained the written consent of one (1) of the parents or the legal guardian of the minor pregnant woman."  I.C. § 16-34-2-4(a).  However, a minor who objects to the parental consent requirement or whose parent or legal guardian refuses to consent may petition the juvenile court for a waiver of the requirement by following the statutory procedures.  I.C. § 16-34-2-4(b).  A physician may also petition for a waiver of the parental consent requirement in certain circumstances.  I.C. § 16-34-2-4(c).

[18]  For each of the statutory provisions highlighted above, the General Assembly has supplied a specific enforcement mechanism to penalize persons who perform illegal abortions.  Indiana Code section 16-34-2-7 provides:

> (a) Except as provided in subsections (b) and (c), a person who knowingly or intentionally performs an abortion not expressly provided for in this chapter commits a Class C felony.[9]
>
> (b) A physician who performs an abortion intentionally or knowingly in violation of section 1(a)(1)(C) or 4 [parental consent and judicial bypass provisions] of this chapter commits a Class A misdemeanor.

---

[8] The specific voluntary and informed consent provisions have been amended numerous times since 2008. *See* I.C. § 16-34-2-1.1 (Supp. 2014).

[9] Effective July 1, 2014, this offense is now a Level 5 felony.

(c) A person who knowingly or intentionally performs an abortion in violation of section 1.1 [voluntary and informed consent provisions] of this chapter commits a Class A infraction.

(d) A woman upon whom a partial birth abortion is performed may not be prosecuted for violating or conspiring to violate section 1(b) of this chapter.

The chapter contains no provision for civil enforcement or any express indication that the legislature intended to create it.

[19] Based on our examination of the statute, we conclude that the legislature intended the provisions of Indiana Code chapter 16-34-2 to protect the general public from persons who, without the professional training and judgment to make the necessary medical determinations – including post-fertilization age of the fetus, trimester of pregnancy, whether consent is informed, or whether abortion is necessary to preserve a woman's life – would perform illegal abortions. Furthermore, the statute contains a comprehensive enforcement mechanism that provides criminal penalties for statutory violations. The statute contains no civil enforcement provisions. "As a general rule, a private party may not enforce rights under a statute designed to protect the public in general and containing a comprehensive enforcement mechanism." *LTV Steel Co.*, 730 N.E.2d at 1260. Because we find both components here, we hold that Indiana Code chapter 16-34-2 does not confer upon the Locketts a private cause of action to enforce the statute's provisions.

[20] The Locketts argue, however, that the statute confers a private cause of action because "the statute does in fact impose a duty for a particular individual's protection, as opposed to a general public benefit." (Appellants' Br. 15.)

However, the fact that a statute incidentally benefits individuals while furthering more general public goals does not alone support the finding of a private cause of action. "[E]ven where a duty benefits an individual, we will not infer a private right of action unless that appears to be the Legislature's intent." *F.D. v. Ind. Dep't of Child Servs.*, 1 N.E.3d 131, 143 (Ind. 2013) (Rush, J., concurring in part, dissenting in part). *See also Borne ex rel. Borne v. Nw. Allen Cnty. Sch. Corp.*, 532 N.E.2d 1196, 1203 (Ind. Ct. App. 1989) (holding that a statute requiring individuals to orally report suspected child abuse and neglect did not create a private cause of action because, even though the reporting requirement individually benefitted potential victims of child abuse and neglect, "there [was] no apparent intent to authorize a civil action for failure of an individual to make the oral report"), *trans. denied*. Absent legislative intent to create such a right, we will not impose it.

[21]     Instead of civil enforcement, our legislature has provided that those persons who knowingly or intentionally violate Chapter 16-34-2 be criminally prosecuted by the State. To the extent the Locketts' claims seek to privately enforce the statutory provisions, the trial court did not err in granting summary judgment for Planned Parenthood on the basis that Indiana Code chapter 16-34-2 does not create a private cause of action for the Locketts.

# Common Law Claims

[22] The Locketts contend, however, that the trial court erred in dismissing their entire complaint because they alleged various common law claims that are unaffected by whether the statute confers upon them a private cause of action.

[23] As best we can discern from their arguments on appeal, it appears that the Locketts seek to advance various common law theories arising from Planned Parenthood's performance of an allegedly "unauthorized (or insufficiently authorized) medical procedure" on Angelique. (Appellants' Br. 11.) As summarized in their brief, "the act that is complained of" is Planned Parenthood's "failure to obtain voluntary and informed consent before performing an abortion" and that this failure was "the direct cause of the injuries suffered by both Lanetra and Angelique Lockett." (Appellants' Br. 17.)[10] The Locketts further explain that they "were not harmed because Planned Parenthood neglected to deliver a particular form, they were harmed because Planned Parenthood performed an abortion on a minor (Angelique) without Lanetra's knowledge or consent." (Appellants' Br. 17.) Thus, the Locketts do not allege that Angelique herself did not consent to the abortion or that the physician's performance of the surgery deviated from the applicable

---

[10] The Locketts' framing of the issue as an informed consent case arising in the context of a medical procedure initially prompted this Court – in an opinion now withdrawn – to consider the case as one of medical malpractice falling within the purview of the Medical Malpractice Act ("MMA"). *See* I.C. § 34-18-1-1 *et seq*. On petition for rehearing, the Locketts alleged, and Planned Parenthood seemingly conceded, that Planned Parenthood was not a "qualified" health care provider within the meaning of the MMA, and therefore not subject to the MMA's provisions and protections for health care providers.

standard of care.[11]  Rather, the gravamen of the Locketts' complaint is that

Angelique, as a minor, lacked capacity to consent and thus Planned

Parenthood's failure to obtain Lanetra's consent resulted in a complete lack of

informed consent.[12]  With this background in mind, we address Lanetra's and

Angelique's claims in turn.

## Lanetra's Negligence Claims

[24]  We turn first to the Locketts' contention that Lanetra may pursue a common

law negligence claim against Planned Parenthood arising out of Planned

Parenthood's failure to obtain Lanetra's consent to the abortion.[13]  They further

contend that where Lanetra's common law claim combines with a violation of

Indiana Code section 16-34-2-4 (parental consent and judicial bypass

---

[11] Under the doctrine of informed consent, a physician must disclose the facts and risks of a treatment that a
reasonably prudent physician would be expected to disclose under like circumstances and that a reasonable
person would want to know.  *Hamilton v. Ashton*, 846 N.E.2d 309, 317 (Ind. Ct. App. 2006), *clarified on reh'g,*
850 N.E.2d 466 (Ind. Ct. App. 2006), *trans. denied.*  This is separate and apart from the physician's duty to
exercise that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent
practitioners in the same class to which he or she belongs, acting under the same or similar circumstances.
*Id.* (citation omitted).

[12] If there is no informed consent, the patient has a claim for the fact that the surgery occurred.  *Hamilton*, 850
N.E.2d at 467.

[13] Planned Parenthood argues that the Locketts did not plead a common law negligence claim.  To the extent
that Planned Parenthood now disputes the basic nature of the claims stated in the complaint, Planned
Parenthood failed to designate the complaint, thus precluding our review of this issue.  *See* T.R. 56 ("At the
time of filing the motion or response, *a party shall designate to the court all parts of pleadings*, depositions, answers
to interrogatories, admissions, matters of judicial notice, and any other matters *on which it relies for purposes of
the motion*.") (emphasis added).  Nevertheless, Indiana's notice pleading provision requires only "a short and
plain statement of the claim showing that the pleader is entitled to relief."  Indiana Trial Rule 8(A).  The
plaintiff need not set out in precise detail the facts upon which the claim is based, but she must plead the
operative facts necessary to set forth an actionable claim.  *Trail v. Boys & Girls Club of Nw. Ind.*, 845 N.E.2d
130, 135 (Ind. 2006).  In light of this standard, we address the negligence claim as though fairly pleaded.

provisions), Lanetra may maintain an action for negligence *per se* regardless of whether a private cause of action exists.

[25] It is hornbook law that to prevail on a negligence claim at common law, the plaintiff must show: (1) duty owed to the plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 6 (Ind. 2010). Absent a duty, there can be no negligence or liability based on the breach. *Id.* Whether the law recognizes any duty on the part of a particular defendant to conform his or her conduct to a certain standard for the benefit of the plaintiff is a question of law for the court to decide. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991).

[26] The Locketts do not use the terms "duty," "breach," or "proximate cause," to explain Lanetra's negligence claim against Planned Parenthood. Instead, they couch their discussion in terms of "rights," particularly focusing on the constitutional dimension of parental rights. (*See* Appellants' Br. 10-14.) The Locketts cite authority affirming the "constitutional dimension to the right of parents to direct the upbringing of their children[,]" *Troxel v. Granville*, 530 U.S. 57, 65 (2000), and recognizing "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66. The Locketts seem to argue that this constitutional liberty interest creates a corresponding duty owed by a health care provider to a minor's parent to notify and obtain consent from the parent when a minor seeks an abortion. They argue that Section 16-34-2-4 merely codifies, not creates, this duty.

[27] We first observe that, to the extent that Lanetra seeks to protect her constitutional liberty interests, she has not alleged state action to support such a claim. *See* 42 U.S.C. § 1983.

[28] Nevertheless, we acknowledge that a parent's fundamental liberty interest in the care, custody, and control of his or her children has been relevant to whether parental consent and notification provisions unconstitutionally burden the right to an abortion. "Numerous and significant interests compete when a minor decides whether or not to abort her pregnancy." *H.L. v. Matheson*, 450 U.S. 398, 418-19 (1981) (Powell, J., concurring). These competing interests include a parent's interest in directing his or her child's upbringing. *Id.* at 419. However, a parent's interest in a minor's decision to obtain an abortion is not absolute. "Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74 (1976). It is well-settled that in the context of abortion, "[a]ny independent interest the parent may have in the termination of the minor daughter's pregnancy is no more weighty than the right of privacy of the competent minor mature enough to have become pregnant." *Id.* at 75. Although the Locketts argue they may maintain a negligence claim at common law based on Lanetra's constitutional liberty interests, her parental rights do not establish a common law duty owed by Planned Parenthood to obtain her consent before providing Angelique with abortion services. "Absent a duty there can be no negligence or liability based upon the breach." *Kroger*, 930 N.E.2d at 6.

Furthermore, we are not persuaded by the Locketts' argument that Lanetra's common law claims, combined with the alleged violation of Indiana Code section 16-34-2-4, provide Lanetra an action for negligence *per se* that exists regardless of whether the statute affords a private cause of action. "[T]he unexcused violation of a statutory duty constitutes negligence *per se* if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation." *Kho v. Pennington*, 875 N.E.2d 208, 212-13 (Ind. 2007) (citation and quotation marks omitted).

Parental notice and consent requirements generally reflect a legislative judgment that, "[a]s immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, . . . parental consultation often is desirable and in the best interest of the minor." *Bellotti v. Baird*, 443 U.S. 622, 640 (1979) (*Bellotti II*). Indeed, "the justification for any rule regarding parental involvement in the abortion decision rests *entirely* on the best interest of the child." *Hodgson v. Minnesota*, 497 U.S. 417, 454 (1990) (emphasis added). In other words, parental notice and consent requirements in abortion statutes are intended to benefit the minor woman seeking the abortion, rather than the woman's parent. Parents thus are not included in "the class of persons" intended to be protected by Indiana Code section 16-34-2-4.

Because Planned Parenthood owes Lanetra no duty at common law and Lanetra is not in the class of persons intended to be protected by the statute,

Lanetra may not maintain against Planned Parenthood either common law negligence or negligence *per se* claims based on Planned Parenthood's failure to obtain her consent before providing abortion services to Angelique.[14]

## Angelique's Claims

[32] Having concluded that Lanetra's claims, if any, are not independent of Angelique's claims, we turn next to Angelique's common law claims against Planned Parenthood for negligence, assault, battery, and negligent infliction of emotional distress. On appeal, Planned Parenthood reasserts two defenses originally presented to, but not explicitly adopted by, the trial court: an immunity provision of the HCCA and the doctrine of equitable estoppel. We address both defenses as they apply to Angelique's claims.

### *Health Care Consent Act*

[33] The facts of this case establish that Angelique presented herself to Planned Parenthood as an individual authorized to consent to her own health care, that is, eighteen-year-old Raven Francis. Based on this representation, Planned Parenthood obtained consent only from the patient. The Locketts now seek to

---

[14] Although the duty at common law is owed to the patient, a parent is not precluded from bringing a common law action for injury to a child. At common law, "[t]he wrongful act by which a minor child is injured gives rise to two causes of action: one in favor of the injured child for personal injuries, and the other in favor of a parent for loss of services." *State v. Eaton*, 659 N.E.2d 232, 237 (Ind. Ct. App. 1995) (citing *Buffalo v. Buffalo*, 441 N.E.2d 711, 714 (Ind. 1982))*, trans. denied. See also Dearborn Fabricating & Eng'g Corp., Inc. v. Wickham*, 551 N.E.2d 1135, 1136 (Ind. 1990) ("[I]njuries to a child will entitle a parent to seek damages for loss of the child's services, society, and companionship."). The parent's claim is extinguished if the child does not recover; in this sense, the parent's claim is derivative of the child's. *See Eaton*, 659 N.E.2d at 237. Neither party suggests that Lanetra brought a claim for loss of services.

recover damages resulting from Planned Parenthood's provision of health care on the ground that Angelique was unauthorized to consent due to her minority.

[34] The HCCA contains "extensive" immunity provisions for health care providers relying on individuals they believe in good faith are authorized to consent to health care. *In re Lawrance*, 579 N.E.2d 32, 43 (Ind. 1991). At the time Angelique obtained services at Planned Parenthood, the HCCA provided:

> (a) A health care provider acting or declining to act in reliance on the consent or refusal of consent of an individual who the provider believes in good faith is authorized to consent to health care is not subject to:
>> (1) criminal prosecution;
>> (2) civil liability; or
>> (3) professional disciplinary action;
> on the ground that the individual who consented or refused to consent lacked authority or capacity.

I.C. § 16-36-1-10(a) (2008). Planned Parenthood contends that this provision immunizes the organization from civil liability on the ground that Angelique lacked authority or capacity to consent.

[35] The Locketts first argue that the HCCA does not apply in this case because the HCCA "is clearly meant to provide health care providers some measure of immunity for their actions when relying on third parties who make health care

decisions for someone else.  In other words, its [sic] about advance directives."
(Appellants' Br. 20.)[15]

[36]    The overarching principle in statutory interpretation is to first decide "whether
the legislature has spoken clearly and unambiguously on the point in question."
*Sloan v. State*, 947 N.E.2d 917, 922 (Ind. 2011) (quoting *Rheem Mfg. Co. v. Phelps
Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 947 (Ind. 2001)).  If a statute is
clear and unambiguous, we do not apply any rules of construction other than
giving effect to the plain and ordinary meaning of the language.  *Id.*  Thus, we
will not delve into legislative intent unnecessarily if no ambiguity exists.  *Id.*

[37]    Here, nothing in the statutory language limits the Section's application to
situations involving end-of-life care or consent given on another's behalf.
Under the plain and ordinary meaning of the language, Section 16-36-1-10
applies when a health care provider obtains consent from "an individual" and
renders health care in reliance on that consent.  This language fairly
encompasses a scenario in which the individual consents to his or her own
health care.

[38]    The Locketts next argue that Section 16-36-1-12(d) of the HCCA, which
provides "[t]his chapter does not affect any requirement of notice to others of
proposed health care under any other Indiana law[,]"precludes the HCCA's

---

[15] Despite their argument that the statute does not apply, the Locketts cite the HCCA, specifically Section 16-36-1-3, earlier in their brief for the proposition that a minor "lacks the maturity and capacity to make an 'informed consent' regarding most healthcare decisions[.]"  (Appellants' Br. 10.)

application to this case. They baldly assert, without citation to authority, that Section 16-34-2-4 is a notice provision, and then argue that because the HCCA does not "affect" the notice provisions of Indiana abortion law, the HCCA cannot provide Planned Parenthood immunity for a failure to comply with Section 16-34-2-4.

[39] First, Section 16-34-2-4 is a consent, not a notice, provision, as demonstrated by the inclusion of a confidential judicial bypass procedure that does not require parental notice. To the extent the Locketts argue that application of the HCCA would override substantive law related to notice, we decline the invitation to construe as substantive that which is procedural. Finally, even if we accepted the argument that a parental notice requirement is implicitly included within the consent provision, we observe that Planned Parenthood had no reason to comply with Section 16-34-2-4 because Angelique misrepresented herself to be an adult authorized to consent to her own health care, and Chapter 16-34-2 does not require notice to another person when an adult woman seeks an abortion. In sum, nothing in the arguments presented on appeal persuades us that the immunity provision does not apply here, where Planned Parenthood administered health care in reliance on the consent of an individual that the organization believed had authority to consent.

[40] The Locketts next argue that even if the HCCA applies, Planned Parenthood has failed to establish that it believed in good faith that Angelique was authorized to consent. "Good faith" is not defined in the HCCA, but generally refers to a state of mind consisting of "(1) honesty in belief or purpose, (2)

faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage." *Black's Law Dictionary* 808 (10th ed. 2014). The absence of good faith is bad faith. *Young v. Williamson*, 497 N.E.2d 612, 617 (Ind. Ct. App. 1986), *trans. denied*. "The phrase 'bad faith' is commonly understood to mean 'lack of honesty and trust' and 'intent to deceive.'" *WellPoint, Inc. v. Nat'l Union. Fire Ins. Co. of Pittsburgh*, 29 N.E.3d 716, 726 (Ind. 2015) (quoting *The Random House Dictionary of the English Language* 154 (2d ed. 1987) & 1 *Shorter Oxford English Dictionary* 921 (6th ed. 2007) respectively), *modified on reh'g*, No. 49S05-1404-PL-244 (Ind. July 29, 2015). As this Court has explained:

> [B]ad faith is not simply bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

*Young*, 497 N.E.2d at 617. *See also Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) ("As a general proposition, a finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.") (citation and quotation marks omitted).

[41] The Locketts argue that "[w]ith no training provided to its employees and no facts alleged regarding any efforts on the part of Planned Parenthood staff, beyond making a copy of the identification, Planned Parenthood has made no allegation regarding its own good faith in the matter." (Appellants' Br. 23.)

[42]  We disagree. In support of its motion for summary judgment, Planned Parenthood designated an affidavit of a front desk employee who averred that she accepted the ID Angelique presented, ensured that it was an authentic State-issued ID, compared the ID photograph to Angelique, and concluded that the patient was who she represented herself to be, that is, eighteen-year-old Raven Francis. Angelique was then presented with a consent form that included the statutorily-prescribed voluntary and informed consent information, to which Angelique forged the name "Raven Francis." The designated consent form stated in part:

> **REQUIRED COMPONENTS OF ABORTION CONSENT DOCUMENTATION**
>
> (1) I hereby consent to an abortion.
>
> [. . . .]
>
> I certify that the above information was received by me at least eighteen (18) hours prior to the date and hour scheduled for my abortion. I fully understand the full nature and extent of this consent and I, therefore, affix my name [. . . ].

[43]  (App. 96.) When Angelique returned to Planned Parenthood six days later, Angelique again represented herself as Francis. Planned Parenthood's physician reviewed her chart, including the copy of the ID Angelique provided, and "found the patient's file and test results to be in order." (App. 76.)[16]

---

[16] The Locketts moved for the trial court to strike paragraphs eight through eleven of the doctor's affidavit because they contained the legal conclusion that the physician believed "in good faith" that Angelique, posing as Francis, was eighteen-years-old. The trial court granted the motion, apparently not limiting the stricken portions to conclusory statements that the doctor acted "in good faith." Accordingly, we disregard all facts and statements listed in paragraphs eight to eleven of the doctor's affidavit.

Angelique was then provided with an abortion. The designated facts therefore establish that Planned Parenthood administered health care in reliance on the consent of an individual whom the provider believed in good faith was authorized to consent to health care.

[44] The Locketts argue that "the good faith requirement of the HCCA means that the health care provider should at least confirm that the decision maker is who they claim to be." (Appellants' Br. 22.) However, the Locketts designated no evidence that Planned Parenthood's employees failed to check ID. Instead, the Locketts direct us to other statutes that require persons working in certain fields to undergo training on effective methods to check IDs,[17] arguing that Planned Parenthood should have adopted these training procedures even though not required by statute.[18] They observe that Planned Parenthood did not provide employees such training, except a 2009 training related to identity theft in health care financial transactions. They contend that Planned Parenthood should have noticed that Angelique's signature on her intake and consent forms were inconsistent.[19] And they point to the fact that Planned Parenthood did not

---

[17] *See, e.g.*, I.C. § 7.1-3-1.5-6(b)(4)(D)-(E) (requiring persons who obtain permits to serve alcoholic beverages to undergo training on methods of identifying underage individuals and how to properly and effectively check ID).

[18] Although the statute sets out certain provisions related to unemancipated minors, *see* I.C. § 16-34-2-4, it does not require that identity, age, or emancipation be verified.

[19] The record contains no comparison between Angelique's forgery of "Raven Francis" and Francis's signature.

check Angelique's ID on the second visit.[20]  The thrust of the Locketts'
argument is that Planned Parenthood should have done more to verify
Angelique's identity and age by adopting better screening procedures.

[45]  However, the allegation that Planned Parenthood should have done more to
detect Angelique's lies does not establish an absence of good faith.  The
designated facts establish that Planned Parenthood provided Angelique with an
abortion because of a mistaken belief – based on Angelique's intentional
misrepresentations – about Angelique's identity and age.  A mistake of fact
based on information provided by the patient does not demonstrate conscious
wrongdoing for dishonest purpose, *Young*, 497 N.E.2d at 617, or lack of honesty
and trust or intent to deceive. *WellPoint,* 29 N.E.3d at 726.  In short, none of
the evidence to which the Locketts point indicates an absence of good faith.

[46]  While Planned Parenthood's designated evidence establishes good faith, the
Locketts have failed to raise a genuine issue of material fact as to Planned
Parenthood's good faith belief.  Planned Parenthood thus has shown its
entitlement to summary judgment under the immunity provision of the HCCA.

---

[20] The Locketts also direct us to Angelique's deposition testimony that Planned Parenthood employees did not start the surgical procedure until McGee arrived because McGee "needs to sign a paper" (App. 133), arguing that "the abortion procedure began before Cathy McGee was even present or had signed the necessary documentation." (Appellants' Br. 23.)  However, nothing in the designated evidence suggests what was contained within this alleged document.

*Equitable Estoppel*

[47] Moreover, even if Planned Parenthood were not immune from civil liability under the HCCA, we conclude that Angelique should be equitably estopped from pursuing her claims due to her fraudulent acts.

[48] Estoppel is a judicial doctrine sounding in equity. *Brown v. Branch*, 758 N.E.2d 48, 51 (Ind. 2001). It is a concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct. *Id.* at 52 (citing *In re Edwards*, 694 N.E.2d 701, 715 (Ind. 1998). There are various estoppel doctrines, including estoppel by record, estoppel by deed, collateral estoppel, equitable estoppel (sometimes called estoppel in pais), promissory estoppel, and judicial estoppel. *Id.* All are based on the same underlying principle: "one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other." *Id.*

[49] The doctrine of estoppel springs from equitable principles and is designed to aid in the administration of justice where, without its aid, injustice might result. *Levin v. Levin*, 645 N.E.2d 601, 604 (Ind. 1994). Equitable estoppel is available only as a defense. *Town of New Chicago v. City of Lake Station*, 939 N.E.2d 638, 653 (Ind. Ct. App. 2010). The party claiming estoppel has the burden to show all facts necessary to establish it. *Id.* 653 (citing *Story Bed & Breakfast, LLP v. Brown Cnty. Area Plan Comm'n*, 819 N.E.2d 55, 67 (Ind. 2004)). "The party claiming equitable estoppel must show its (1) lack of knowledge and of the

means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." *Money Store Inv. Corp. v. Summers*, 849 N.E.2d 544, 547 (Ind. 2006).

[50] The basis for equitable estoppel is fraud, either actual or constructive, on the part of the person estopped. *Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990) (citing *Lawshe v. Glen Park Lumber Co., Inc.*, 176 Ind. App. 344, 347, 375 N.E.2d 275, 278 (1978)). Constructive fraud arises by operation of law from conduct that, if sanctioned by law, would secure an unconscionable advantage. *New Chicago*, 939 N.E.2d at 653 (citing *Paramo*, 563 N.E.2d at 598). Whether certain conduct actually prevents inquiry, eludes investigation, or misleads, reflects upon the unconscionability of the resulting advantage. *Paramo*, 563 N.E.2d at 599. "Whether conduct rises to the level sufficient to justify the application of equitable estoppel depends on the facts and circumstances of that particular case." *Davis v. Shelter Ins. Cos.*, 957 N.E.2d 995, 999 (Ind. Ct. App. 2011), *trans. denied.*

[51] There is no dispute that Angelique fraudulently misrepresented herself as eighteen-year-old Raven Francis during her interactions with Planned Parenthood. The designated evidence shows that Planned Parenthood lacked knowledge of Angelique's true identity and age because Angelique concealed those facts. Planned Parenthood then relied on Angelique's misrepresentations and provided her with medical services after obtaining only her consent. Angelique now argues that her consent was insufficient, and she seeks to

recover damages arising from Planned Parenthood's provision of services. Having shown the requisite elements of equitable estoppel, Planned Parenthood has carried its burden that summary judgment is appropriate on this ground.

[52] On summary judgment, if the movant carries its burden to establish entitlement to judgment as a matter of law, the burden shifts to the non-movant to present evidence establishing the existence of a genuine issue of material fact. *Asklar*, 9 N.E.3d at 167. The Locketts now point to the instrument of Angelique's fraud – Francis's ID – and argue that this document gave Planned Parenthood the "means of knowledge" as to the facts in question. Specifically, they argue that because the height and weight listed on Francis's ID differs from those recorded in Angelique's medical chart, Planned Parenthood "fail[ed] to avail itself of the information in its possession" in order to "detect the lie." (Appellants' Br. 25.) They also argue that Planned Parenthood should have adopted better training procedures to detect Angelique's use of another's ID. Having not done so, the Locketts argue that Planned Parenthood was negligent when it failed to root out Angelique's lie.

[53] The designated evidence shows that Angelique not only withheld vital information, but engaged in a course of conduct designed to deceive Planned Parenthood.[21] Specifically, Angelique presented a valid state ID belonging to

---

[21] Our criminal code provides that a person who, with intent to defraud, misrepresents the identity of the person or another person commits deception, a Class A misdemeanor. *See* I.C. § 35-43-5-3(a)(6). "An intent to defraud involves an intent to deceive and thereby work a reliance and injury." *Wendling v. State*, 465 N.E.2d 169, 170 (Ind. 1984).

an eighteen-year-old for the express purpose of misrepresenting herself to obtain medical services. Angelique was accompanied by McGee, who reinforced Angelique's assumed identity to the office staff by posing as Francis's mother. Angelique knew in advance that McGee planned to pose as her mother and acquiesced in the plan. Angelique forged Francis's name to documents consenting to an abortion. She returned six days later and again assumed Francis's identity. At no time did Angelique reveal to anyone at Planned Parenthood her actual identity or the true nature of her relationship with McGee.

[54]   As plainly stated in Angelique's deposition:

> Q:   You never told them that your date of birth was actually October [. . .] of 1992?
>
> A:   No, sir.
>
> Q:   You never told them that you were not old enough to give consent yourself for an abortion procedure?
>
> A:   No, sir.
>
> Q:   You never told them that the I.D. card you presented was not your I.D. card?
>
> A:   No, sir.
>
> Q:   You never told them that Cathy McGee was not really your parent?
>
> A:   No, sir.
>
> Q:   You never told them that you were seeking this abortion without the knowledge and consent of your actual parent, LaNetra Lockett?
>
> A:   No, sir.
>
> Q:   You concealed all this information from Planned Parenthood?

A:  Yes, sir.

(App. 155.)

[55] A health care provider, in the course of rendering treatment based on a patient's undetected misrepresentations, should not be held liable for failing to discover the patient's lies. *See, e.g., Town of New Chicago*, 939 N.E.2d at 641, 654 (where plaintiff gave "no indication that anything was wrong," holding that defendant invoking equitable estoppel did not have "means of knowledge" simply because defendant could have asked for more information from plaintiff). Nor should a health care provider be liable for failing to protect the patient from her own intentional acts. *See, e.g., McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 910-12 (Ind. 2009) (holding that there was no breach of a hospital's duty to protect a patient from domestic violence where, despite staff members' suspicions and signs that patient's ex-husband inflicted her wounds, hospital staff assented to patient's firm and unwavering insistence on departing with ex-husband, who killed her on the way home). To hold otherwise would be inequitable and unjust.

[56] Under these facts and circumstances, where the negligence the Locketts allege is a failure to detect Angelique's lies, Planned Parenthood has established the defense of equitable estoppel, the Locketts have failed to raise a genuine issue of material fact, and Planned Parenthood is entitled to summary judgment on Angelique's claims.

# Claims against McGee

[57] We turn our attention now to the Locketts' claims against McGee. In its order, the trial court granted Planned Parenthood's motion for summary judgment. The court also purportedly dismissed the Locketts' complaint in its entirety and entered "Judgment for Defendants," even though McGee may not have been served.

[58] The Locketts' statement of the case asserts that "McGee has never appeared and no default was entered against her[.]" (Appellants' Br. 1.) We note that Trial Rule 55(B) requires that "[i]n all cases the party entitled to a judgment by default shall apply to the court therefor;" however, it does not appear from the record that the Locketts have moved for default judgment.

[59] Moreover, to the Locketts' point that McGee has not appeared, it is unclear whether the Locketts have ever successfully served McGee. The Chronological Case Summary ("CCS") contains two entries on September 30, 2011, showing that service of the summons and complaint was attempted on McGee by certified mail on September 6, 2011 and returned on September 30, 2011. One entry states "ACCEPTED," while the other indicates "Unsuccessful – Unclaimed." (App. 6.) Then, on August 16, 2012, the CCS contains an entry showing that the Locketts attempted to serve by sheriff an alias summons and complaint. According to an August 27, 2012 entry in the CCS, service by sheriff was returned as "Unsuccessful – Moved" with the comment "BOARDED UP ABANDONED PER SGT. L. SMITH ON 8/24/201[2]."

(App. 6.) Thereafter, the CCS contains no additional entries of attempted service on McGee, but notes "returned mail addressed to Cathy McGee" on February 25, 2014 (App. 4), and "MAILE[D] PLEADINGS OF 6-20-14 RETURNED UNABLE TO FORWARD ON CATH[Y] MCGEE RECEIVED 7-14-14" on July 16, 2014. (App. 3.)

[60] Because it appears that McGee has not been served, we think the court's order granting "Judgment for Defendants" and dismissing the complaint entirely was premature and therefore erroneous. We accordingly remand this case to the trial court for further proceedings with respect to McGee.

# Conclusion

[61] Indiana Code chapter 16-34-2 does not confer on the Locketts a private cause of action to sue Planned Parenthood for violations of the statute; accordingly, the trial court did not err in entering summary judgment in favor of Planned Parenthood on the Locketts' claims brought to enforce the statutory provisions. Because Planned Parenthood did not owe Lanetra a duty at common law to obtain her consent to the abortion and because Lanetra is not in the class of persons intended to be protected by the parental consent provisions, Lanetra may not maintain against Planned Parenthood actions for negligence or negligence *per se*. Under these facts and circumstances, the HCCA provides Planned Parenthood immunity from civil liability. In addition, Angelique is equitably estopped from bringing her claims against Planned Parenthood due to her fraudulent acts. However, because the court's order was premature with

respect to Angelique's claims brought against defendant McGee, we remand for further proceedings consistent with this opinion.

[62] Affirmed in part, reversed in part, and remanded.

Robb, J., and Brown, J., concur.